Juan C. **Cabrera,**
Plaintiff/Appellant,

**v.**

Ahn Yeong **Mi,** fka In Jung Hee,
Defendant/Appellee.
Appeal No. 96-022
Civil Action No. 94-0324
October 23, 1997

Argued and Submitted September 30, 1997

Counsel for Appellant: Antonio M. Atalig and Reynaldo O. Yana, Saipan.

Counsel for Appellee: Michael W. Dotts, Saipan. (Law Offices of O'Connor, Berman, Dotts & Banes)

BEFORE: TAYLOR, Chief Justice, LIZAMA and SALAS, Special Judges.

TAYLOR, Chief Justice:

¶1 ■ The appellant, Juan C. Cabrera ("Cabrera"), appeals the Superior Court's judgment dated March 29, 1996 finding that a valid written lease exists between Cabrera and Ahn Joon Chul ("Mr. Ahn"), the husband of appellee Ahn Yeong Mi ("Mrs. Ahn"), who is presently in possession of the property. We have jurisdiction pursuant to 1 CMC §3102(a). We affirm.

## ISSUE PRESENTED AND STANDARD OF REVIEW

¶2 We are asked to determine whether the Superior Court properly determined that a valid written lease exists between Cabrera and the Ahns based upon the weight of the evidence presented at trial.

¶3 ■ The Superior Court's findings were made after two-day bench trial. Issues involving questions of fact are subject to the clearly erroneous standard of review. *Estate of Deleon Guerrero*, 3 N.M.I. 253, 263 n.8 (1992) relying upon *Pangelinan v. Unknown Heirs of Mangarero*, 1 N.M.I. 387, 393 (1990).

## FACTS AND PROCEDURAL BACKGROUND

¶4 On October 18, 1983, Cabrera leased his property, Lot 008 H, Chalan Kanoa ("the property"), to James Seung Woo Lee ("Mr. Lee"), for a term of twenty years commencing November 1, 1981, with an option to renew the lease for another twenty years ("the original lease"). Under the original lease, Mr. Lee made monthly payments of $500.00 to Cabrera for four years.

¶5 On February 24, 1985, Mr. Lee transferred his rights

under the original lease to Mr. Ahn. The original lease allowed for its assignment or transfer without the consent or without notice to Cabrera.

¶6    On April 15, 1985, Cabrera and Mr. Ahn directly entered into a new lease agreement over the property for a twenty year term commencing on April 16, 1985, with an option to renew the same for another twenty years ("the 1985 lease"). The 1985 lease was duly notarized by Servando SP Regis.

¶7    On January 30, 1987, Cabrera and Mr. Ahn executed an additional lease agreement that amended the rent payment schedule ("the 1987 lease"). The 1987 lease also acknowledged the validity of all terms and conditions of the 1985 lease. It was properly recorded at the Recorder's Office as Document No. 87-0182 and was duly notarized by Maria Diana K. Torres.

¶8    Throughout the duration of the lease, the Ahns made all rent payments to Cabrera. Beginning in 1992, Cabrera refused to accept rent from the Ahns. The Ahns thereafter tendered rent by depositing the payments into an interest bearing trust account in favor of Cabrera and gave notice of the account to Cabrera on three different occasions.

¶9    On April 8, 1994, Cabrera filed a complaint to terminate the Ahns tenancy to the property alleging non-payment of rent.  Cabrera filed a second amended complaint on November 8, 1994, alleging that in addition to the non-payment of rent, Cabrera had a right to terminate the Ahns' occupancy on the theory that the subsequent 1985 and 1987 additional leases were invalid because Cabrera's signatures on the leases were forgeries.

¶10    The matter went to trial on February 28, 1996. When Cabrera rested his case, the Ahns moved for a directed verdict on the issue of whether the Ahns had validly tendered rent. The trial court granted the directed verdict finding that the Ahns had not breached the lease for nonpayment of rent. The grant of the directed verdict has not been challenged on appeal.

¶11    After a two day bench trial, wherein the trial court judge heard the testimony of six witnesses, including two expert witnesses on handwriting analysis, and analyzed dozens of exhibits, the Superior Court found that: 1) the 1985 lease was in fact signed by Cabrera; 2) the 1987 lease was in fact signed by Cabrera; 3) neither the 1985 nor the 1987 leases are in default for failure to tender rent and are, therefore, valid and enforceable.[1] Cabrera timely appealed.

## ANALYSIS

### I.    Is the Superior Court's judgment clearly erroneous?

¶12    Cabrera contends that the Superior Court's decision is clearly erroneous and should be reversed on appeal. Cabrera further argues that Superior Court erred by not accepting the testimony of his handwriting expert who during the course of examining the lease documents found that the signatures on the 1985 and 1987 leases were not Cabrera's. According to Cabrera, in the instant case, a thorough examination of the entire record, specifically the documents offered into evidence, would show that: (1) there was a systematic intent by Mr. Ahn to forge the leases as Mr. Ahn conveniently did not appear during trial; (2) the alleged transfer of interest was not consistent with the original lease between Cabrera and Mr. Lee in many respects; (c) and the conduct of the Ahns was not consistent with those of a bona fide assignee of Mr. Lee. As such, by a thorough examination of the record on appeal, this Court would conclude that a mistake has been clearly committed.

¶13    The Ahns, on the other hand, urge this Court to affirm the decision of the trial judge made after a two day bench trial, wherein the trial judge had the opportunity to hear the testimony and determine the credibility of six witnesses presented, including two expert witnesses on handwriting analysis. According to the Ahns, Cabrera is simply attempting to evict the Ahns on the basis that his signatures on two different leases were forgeries. At trial, a credible expert witness testified that Cabrera's signature was in fact authentic. The two notaries that witnessed Cabrera sign the 1985 and 1987 leases also testified that Cabrera's signatures were genuine. Furthermore, for years, Cabrera accepted rent from the Ahns demonstrating by his conduct that his signatures were in fact authentic. Consequently, the trial court had little difficulty in finding the leases to be valid.

¶14    ■ We begin our analysis by emphasizing the high burden under the clearly erroneous standard that Cabrera must prove in order for this Court to disturb the lower court's findings. The assessment of evidence is a trial function. *Manglona v. Kaipat*, 3 N.M.I. 322, 336 (1992). It is not the province of the reviewing court to reweigh the evidence. *Cabrera v. Cabrera*, 3 N.M.I. 1, 7 (1992). Unless the Court is firmly convinced that a mistake was clearly committed below, it will not disturb the assessment of the trial court. *Manglona* 3 N.M.I. at 336; *Estate of Deleon Guerrero*, 3 N.M.I. at 263.

¶15    Because of the high standard of review, this Court may only reverse if the findings of the trial court are clearly erroneous. At the conclusion of the two-day bench trial, the trial court judge made the following ruling from the bench concerning Cabrera's testimony and his "faulty" memory:

> First of all, Mr. Cabrera may not be lying, he may truly believe that he did not sign these documents but his memory is very selective

---

[1]    *Cabrera v. Mi*, Civil Action No. 94-0324, (N.M.I. Super. Ct. March 29, 1996) (Judgment at 2) ("Judgment").

because that is all he remembers. He remembers he just didn't sign, he just didn't have a written agreement but he remembers very little of the events surrounding the leases and he remembers very little about the events surrounding the rent payments in 1993. He remembers things when he is presented with a document showing that he received a rent check in 1993 of the entire year of 1993 years' rental but his ability to recall when he did consult an attorney and all those things is very confused and of course that is not totally unusual in view of his age [72 at the time of trial]. His [sic] also got certain infirmities, his [sic] got problems with eye sight, he certainly has a problem with understanding the legal ramifications of some of these documents because he doesn't understand that the lease he had with Mr. Lee in 1983 was really for 40 years because it was a 20 year lease but Mr. Lee had the right to renew it for another 20 years under the terms of the lease that he signed .... its just the courts [sic] finding that Mr. Cabrera's memory is *faulty*.

Trial Transcript, at 240-241 (emphasis added).

¶16    The judge also took into account the testimony of both handwriting experts and found that Cabrera's expert, Mr. Pagui, was impeached by the defense in cross-examination:

> Then we look at the experts. Off [sic] course Mr. Pagui did testified [sic] the way he testified but Mr. Pagui's expert's [sic] opinion is, has been somewhat impeached by the defense because Mr. Pagui himself testified that in order to validate his preliminary opinion as to the signatures, he must look at the originals and I think that the defense has clearly established with clear and convincing evidence that he could not have viewed the originals since there is only one possible original of each document and that was in the possession of the defendant in her locked file.

Trial Transcript at 241-242.

¶17    ■ The trial court judge then went on to outline in detail, the credibility of the testimony of the notary publics before making his ruling:

> But beyond the experts we have the notary publics and the notary publics don't have, at least you haven't shown me any motive or bias to say that Mr. Cabrera was there when he really wasn't there. And so Ms. Torres testified pretty convincingly, Ms. Torres has been working you

know for a law office for many years and she understands some of these legal significance and she has a log which reflected that she notarized these documents. So it is kind of hard for me to believe even if I discount the evidence of the experts as being equal that this notaries [sic] would just come in here to lie because they like Mrs. Ahn or they like Mr. Ahn, whoever was involved. I can't see that. *So on the basis of that corroborating evidence, it is clear to the court that Mr. Cabrera did sign the '85 and '87 lease and that those leases obviously do exist.*

Trial Transcript at 242-243 (emphasis added). The record is clear: Cabrera's memory was faulty; Cabrera's handwriting analysis expert was impeached; and the unbiased testimony of the notary publics established that Cabrera did sign the 1985 and 1987 leases. Because the decision is amply supported by the evidence presented, we find no error in the Superior Court's decision.

*II.   Is this appeal frivolous such that an award of attorney's fees and costs are permissible?*

¶18    ■ The Ahns request the award of double costs and reasonable attorney's fees as sanctions against Cabrera for filing this frivolous appeal. According to the Ahns, Cabrera contends the decision by the lower court is erroneous as contrary to the weight of the evidence, but fails to specify as to which of the findings were clearly erroneous. Instead, Cabrera reiterates specific portions of his self-serving testimony and the impeached testimony of his own expert witness. In addition, Cabrera has totally ignored the unbiased testimony of the two notary publics who positively identified Cabrera to be the same person who appeared before them and who signed the 1985 and 1987 leases.

¶19    "If this Court determines that an appeal is frivolous, it may award just damages and single or double costs to the appellee, including reasonable attorney's fees." Com. R. App. P. 38(a). A frivolous appeal "is one in which no justiciable question has been presented and the appeal is readily recognizable as devoid of merit in that there is little prospect that it can ever succeed." *Commonwealth v. Kawai*, 1 N.M.I. 66, 72 n.4 (1992).

¶20    Beginning in 1992, Cabrera refused to accept rent from the Ahns, forcing them to make payment by depositing rent into an interest bearing trust account. Cabrera then filed his complaint to terminate the Ahns lease on April 8, 1994. The Superior Court properly found that the Ahns had a valid written lease with Cabrera and that Cabrera had in fact signed the 1985 and 1987 leases. Despite those findings, appellant appealed. The effect has been to cause the Ahns to be in "legal jeopardy" over the status of their lease for the past three and one half

years, including the nineteen months spent to exhaust this appeal. The Ahns have further been burdened beginning as early as 1992 when Cabrera refused rent, over five years ago. In reviewing the record in its entirety, we find this appeal completely devoid of merit with little prospect that it could have succeeded as the record was amply supported by the evidence presented at trial, and the trial judge carefully considered all the surrounding circumstances, expert testimony and evidence presented. As this is a frivolous appeal, sanctions are warranted.

¶21 Accordingly, we will grant appellant thirty days in which to show cause why he should not be taxed double attorney's fees and costs incurred in this appeal, and why both Cabrera and his counsel should not be held jointly and severally liable for this sanction. The Ahns may have seven days after receiving Cabrera's submission to file any response. Upon receiving these papers from both parties, the Court will issue a final ruling with respect to the amount of sanction to be imposed.

### CONCLUSION

¶22 For the foregoing reasons, we hereby **AFFIRM** the judgment of the Superior Court. Appellee's request for sanctions pursuant to Com. R. App. P. 38(a) is hereby **GRANTED**. Appellee shall submit a statement of attorney's fees and court costs within fourteen days of this decision. The appellant is **ORDERED** to show cause within thirty days of this opinion why he should not be taxed double costs for filing a frivolous appeal. Appellee may have an additional seven days to respond to appellant's submission.